Good morning Judge O'Scanlan, Judge Talman, Judge Smith. May it please the Court, my name is Susan Harlevy, representing Appellant James Davis, and I would like to reserve two minutes for rebuttal. You just watch the count as it comes down. Thank you. And if you wouldn't mind, I know you're speaking in the mic, but it's hard for me to, your words are not as distinct as I'd like them to be. If you'd stand back just a little bit from the mic, let's try that and see if that works. How's that? Better. That's fine. Thank you. Thank you for letting me know. Appreciate it. In this case, Mr. James Davis grew up on Maui. He bought property there in an area called Upcountry where it is very hard to get a water meter. Mr. Davis was one of the lucky few who was entitled, as the county acknowledged, to receive a water meter. In 2002, the county adopted a water meter rule that instituted a priority list under which no one gets a water meter. Can I ask you this question, Ms. Harlevy? Yes, sir. I feel very sorry for your client. I honestly do. But are you familiar with the case of Mishishia v. Perry? Yes, I am, Your Honor. I mean, obviously, there's a medical situation. But as far as the issue of race judicata and dealing with government administrative agencies, what's the difference here? I'm having real difficulty carving through that. Judge Smith, I think that's the most difficult question in this case. Help me with it. And the difference is that in Mishishia, that was a true and impermissible collateral attack because the dentist in that case came to federal court and alleged that his right to procedural due process had been violated in the administrative proceeding itself. That is an impermissible collateral attack. What you're arguing here is basically that he just didn't get notice. Well, the distinction, Your Honor, if I may, between this case and Mishishia, is that this is a permissible collateral attack. We believe that the Board of Water Supply either did not have jurisdiction to decide the constitutional questions, or if it did, it was what was known under Shaw as incidental jurisdiction. But your remedy, was it not, was before the state trial court to have an appeal within 30 days where under the Hawaiian statute you could have raised all of those issues, right? That would be the way in which to appeal that decision. However, it is not required under this court's holdings in outdoor media to exhaust state court remedies. And we are not mounting an impermissible collateral attack because we do not challenge that his rights to procedural due process were violated by the Board of Water Supply. That is the distinction between this case and Mishishia. Isn't it the Board of Water Supply that you allege improperly notified or failed to adequately notify all of the potential water meter rights holders in 2002? No, Judge Tallman, and that's the difference between this case and Mishishia. In Mishishia, there was a collateral attack by challenging that the procedural due process had not been followed by the Board. I'm having a hard time drawing the fine distinction that you're trying to draw. Let me come at the question a different way. Isn't a lack of proper notice inherently a due process challenge? It is, Your Honor. However, that issue either was not properly before the Board of Water Supply, or if it was, it had only incidental jurisdiction to decide it. But the allegation is that it was the Board of Water Supply, once the county adopted the 2002 ordinance, that failed to go through the tax assessor records, identify all of the upcountry Maui property owners, and send individual notices to each tax holder, as opposed to general notice through publication in local Hawaii newspapers. Isn't that the argument? No, it is not, Your Honor. Our argument is that the Department of Water Supply violated Mr. Davis's right to due process. Isn't the Board of Water Supply, isn't it part of the Department of Water Supply? No, Your Honor, most definitely not. Your argument is that it's a separate administrative body within the county of Maui? Most assuredly, Your Honor. Where is that in your pleading? It is in the citations to the county of Maui charter. I have to say, I didn't understand that argument from your briefing, because I don't know that you made that point very clearly. Perhaps we could take a step back and take a quick look at the facts. The Department of Water Supply adopted the water meter rule. It did so, the Department of Water Supply did so, without providing adequate notice to Mr. Davis, who was living in California at the time. What actual notice was given by the department? How did the department purport to comply with this notice requirement? They gave notice by publishing notice of the rule and of the cutoff date. Mr. Davis had a certain time to get a water meter, and then it was over. Publishing where? Publishing it in local newspapers on Maui and possibly also in Honolulu. But Mr. Davis in California, this notice was in no way reasonable notice to reach someone in another state. Do you realize that if we accept your argument that the default notice provisions in every state in the union would be invalid, I mean, yes, when you're trying to get jurisdiction over somebody, you try to serve them personally and so on, but in almost all property matters, property tax, rights such as this, if you can't find the person, you publish in one or more newspapers of general circulation. Isn't that correct? Your Honor, there is a case. If you wouldn't mind answering my question first. Isn't that correct? For service, yes, but in Jones against Flowers, which is a United States Supreme Court case in 2006, notice was mailed of a tax sale, and that notice was returned unclaimed, and the Supreme Court held that the means employed must be such as one reasonably desirous of actually informing the absentee might reasonably adopt to accomplish it, which means they had to do more than that. They overturned that one. They found that that was inadequate notice for procedural due process purposes. And were the facts similar to this case? The facts, of course, are always a bit different, but that's the closest precedent to this case. I'm still having a hard time, though. I filed a 28-J letter, I believe it was yesterday, with us acknowledging what appear to be well-settled Hawaii cases, holding that the board does have jurisdiction and that your right of review should have been to the Circuit Court of Hawaii. And there's no challenge here to the fact that Mr. Davis made a conscious decision not to challenge and raise this issue before the Circuit Court. Why shouldn't we follow the settled authority and apply it to say that this is basically a waiver of his statutory remedy and therefore we cannot afford relief in a federal court? There are two distinct reasons, Your Honor. One is that this particular rule, the water meter rule, did not even empower the Department of Water Supply to decide whether to grant a meter. In fact, Director Eng said, I'm not empowered to decide this question. The only thing possible under the ordinance is for the Board of Water Supply to waive the rule if it causes an absurd, unfair, or unreasonably harsh result. So it was not properly a contested case hearing at all. But with respect, counsel, you responded to Judge Tallman with respect to your 28-J letter admissions that Hawaii law is pretty clear about this. By virtue of his not having appealed within the 30 days, there's a race judicata effect. And in our case, Guy-Sign International v. City and County of Honolulu, we said federal courts must accord a state court judgment the same preclusive effect that the judgment would receive in the rendering state's court. What's the difference here? The difference here, I mentioned that there are two ways to go. The simple solution, which avoids these thorny jurisdictional issues, is to recognize that this particular ordinance was not supposed to be decided in a contested case hearing at all. That is briefed on pages 41 to 43 of our brief. The other- I'm sorry, I misunderstood you. I misunderstood you. Say that again, what you just said. There are two ways to go here confronting this very difficult jurisdictional issue. One is that you don't have to reach it in this particular case. But- The other- Here you have a situation. Again, I thought I heard you say that you agreed in your 28-J letter that under Hawaii law that the board and the county folks complied with Hawaiian law in what they did. Your client chose not to appeal within 30 days. I cited to you a case that says we, as a federal court, must accord preclusive effect to what they did, assuming it's preclusive under Hawaii law. And if you've already admitted that it's preclusive under Hawaii law, I don't see what second way there is to look at this. Help me out, what am I missing? The second way, Your Honor, is to look at the case of Shaw, which is also cited in the letter that I provided to the court. In Shaw v. State of California, Department of Alcohol and Beverage Control, 788F2-600, this court held that when agencies decide constitutional questions, they do so only incidentally, not with a preclusive effect. This is similar to the Hawaii case of Inouye v. State of Cam, which is cited in our briefs. It's 129P Pacific 2nd, 3rd, 511. In that case, a probate court should not have been, had given preclusive effect to an earlier decision of a family court because the family court did not have jurisdiction to decide the question. Under Shaw, the court, this court held, citing the statement of judgments, which is a venerable authority, that where an agency has jurisdiction, it's only incidental and should not be given preclusive effect. Well, that may be true with respect to matters that are not precluded under the state law. But what I'm wrestling with here is that in this particular case, you seem to admit, and the record seems to bear this out, that the state and the county, or the board and the county followed Hawaii law, that by not appealing the decision of the board, the final decision of the board was the last decision of the state in accordance with state law as to the issues decided there. I gather your client had an opportunity to appeal, which he did. Within that body, he had due process there. I'm just not seeing this second avenue you're talking about. What will happen if you so rule is that you will set up a direct conflict with the line of cases most recently articulated in outdoor media that does not require exhaustion of state court remedies, does not require an appeal. This isn't an exhaustion question, is it, counsel? We're talking about preclusive effect of issues of law, in fact, that were determined by appropriate state and local bodies. It effectively closes the door to 1983 in the federal courts. Part of the problem is that you're asking a federal court to review the determination of a state administrative agency, and I think we have a number of cases that say we don't do that. That is not the proper role of a federal court, whether it's in a 1983 action or some other general challenge. I'm arguing, Your Honor, that under Shaw, that holding was incidental. It was not entitled to preclusive effect, and that Mrs. Chia is to be distinguished because in that case they said that the administrative proceeding itself did not comply with procedural due process, and I see that if I wish to retain some time for rebuttal. But you're not challenging the decision here. There's no due process violation, so far as you're concerned, with regard to how the Board of Water Supply conducted the hearing. That is correct, and that is the difference between this case and Mrs. Chia. I think I understand. Yes, sir. You may reserve the rest of your time. Yes, thank you. We'll hear from the county. Aloha, and may it please the Court. I'm Jane Lovell, Deputy Corporation Counsel for the County of Maui, and with me is the Corporation Counsel, Mr. Patrick Wong. The Court is absolutely correct that Mrs. Chia v. Peary is the key case here. Under that case, that clearly establishes, and cases subsequent to that have established, that when there is an avenue of appeal from a state or a county administrative body directly to a state court, that any attempt to circumvent that process by going to federal court, whether under the guise of 1983 or otherwise, is precluded. And the district court below correctly applies that authority. I did receive the letter from Ms. Harivi rather late in the day yesterday, and I may not have had time to fully go through all of the points that she was trying to raise with respect to the Shaw case. But that case was an enforcement action before the California Alcoholic Beverage Control Board by a bar that raised as a defense the fact that the local police were constantly harassing the bar owners due to race, and that therefore, they should not have had various problems enforced against them. And that particular case basically dealt with issues that were totally extraneous to the normal role of the ABC, right? Exactly. And that's what the court held was that the issues that were squarely within the jurisdiction of the Alcoholic Control Board were precluded, but that the police brutality claims were not precluded because those are not squarely within the jurisdiction of the liquor control people. That's really, it doesn't really make much difference here. We're dealing with a water rule adopted by the county water authorities. They have a procedure where you can appeal a director's decision. Mr. Davis did that. He went through his full appeal hearing. He himself is a lawyer. He put in evidence. He put in a legal brief. At the conclusion of all of that, he was advised, and we know that he got the advice because we have his acknowledgement on the letter. He was advised that he had the opportunity to appeal, that the appeal was subject to Chapter 91-14 of the Hawaii revised statutes, and that he must do so within 30 days. And he did not. And, in fact, his attorney said at the district court that he chose not to take that route on purpose. Now, I don't know what the thinking was, but apparently he knew he had that right and he did not take it. Certainly, all of the issues that he raised could have been decided in a state court. They were decided against him in the first instance by the Board of Water Supply. The Board of Water Supply made a legal finding that it had jurisdiction. They made a factual finding that it was impractical and bordering on impossible to give actual notice to everybody in the upcountry area who might someday want a water meter but hadn't yet applied for one. So on the basis of those findings, he's out of luck unless he appeals, and he did not. Counsel, can I just ask about notice provisions? You heard counsel indicate that there was newspaper notice. Does the county also notify property holders by virtue of the addresses that they have filed with the county? Well, the problem, Your Honor, is that Mr. Davis said that the county should have gone through the tax records. There they had his name and address, and everybody on the tax rolls should have gotten mail to notice. The problem is, of course, the tax records don't indicate who already has a water meter and who doesn't. And the Department of Water Supply doesn't, has a record of the people who already have meters, but doesn't have a record of the people who do not have meters. Tax records often, or tax addresses, often are a bank or a mortgage holder. You know, the tax bill could go directly to Mr. Davis, or it could go- But is that procedure ever invoked? Not to my knowledge, particularly because of the fact that the water department, which knows who their customers are, has really no way of knowing who a taxpayer is, and the tax department doesn't have a very good way of knowing which taxpayers don't have water meters. And that's precisely what the Board of Water Supply found as a factual finding, based on testimony, was that there was no practical means of determining which taxpayers did not already have water meters. And that's where Mr. Davis had a right to appeal to the state circuit court and allege the insufficiency of the county's approach to notice, is that correct? Certainly. He had that right, and the state courts were fully competent to decide that, either in the county's favor or against the county. But having failed to do so, at least as far as I can tell, he's out of luck. Precisely. Precisely. And I think that's basically our argument, unless the court has any other questions. No further questions. Thank you, Counsel. Ms. Halevy, you have a little bit of reserve time. Thank you, Your Honor. May it please the Court, this is a very disturbing case, because if this Court takes the radical step and holds that there is no avenue in federal court for any 1983 claim that is or might be, because that is the effect of preclusion, is or might be raised in an administrative body, it will directly conflict with outdoor media, which holds that. But to the extent that you are asking, you're essentially asking us to rule in contradiction to the rule that is set out in Mississhia and essentially establish a new avenue of subsequent appellate remedies through some sort of a federal action where the party has chosen not to avail itself of adequate appellate remedies that are provided by state law, and that seems to me to be bad legal policy. That is really intruding on the rights of the state courts to decide in the first instance whether their administrative agencies have comported with both the state and federal constitution in the way they conduct their business. That is not this Court's position in outdoor media, in which it supports the right to come to federal court on claims under 1983. In addition, again, Mississhia can be distinguished because that attacked the procedure due process of that administrative agency. And finally, the whole jurisdictional issue can be avoided, this particular aspect of it, by the fact that there was no jurisdictional basis for having a contested case hearing with regard to this ordinance as described in our brief on pages 41 to 43. Thank you, Your Honor. Thank you, Counsel. The case just argued will be submitted for decision, and the Court will hear argument next in United States v. Mendoza.
judges: O'scannlain, Tallman, Smith